UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EILEEN SIWULA, as the Special Administrator of the Estate of EUGENE GRUBER, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>LAKE COUNTY, ILLINOIS, et al.,<br><br>    Defendants. | Case No. 12-CV-02096<br><br>Judge George W. Lindberg<br><br>Magistrate Judge Sheila M. Finnegan<br><br>JURY DEMANDED |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Eileen Siwula, filed this federal civil rights action arising from the October 31, 2011, arrest and detention of her brother, Eugene Gruber ("Gruber"), in the Lake County jail.

### SUMMARY OF PLAINTIFF'S ALLEGATIONS[1]

**October 31, 2011 First Shift.** On the morning of October 31, 2011, Gruber was arrested for criminal trespass and disorderly conduct and brought to Lake County jail for processing. *See* Dkt. No. 43, Sec. Am. Cmplt. at ¶ 12. However, Gruber was intoxicated and resisted officers' efforts to process him in the sally port area of the jail. *Id.* at ¶ 14. Accordingly, the officers escorted Gruber to holding cell B1. *Id.* In B1, Gruber was pepper-sprayed by Officer Rice and physically assaulted and beaten by other officers. *Id.* at ¶ 17. After the pepper-spray, officers escorted Gruber to the shower/changeover room for decontamination. *Id.* at ¶ 20. Officer Rice performed a "takedown" move on Gruber in the shower/changeover room, which resulted in Gruber's quadriplegia and inability to walk. *Id.* at ¶¶ 22-23. Officers took Gruber from the shower/changeover room to holding cell B6. *Id.* at ¶ 24. The jail nurse did not perform a

---

[1] For this motion only, plaintiff's well-pleaded allegations are taken as true.

medical intake on Gruber during this shift, and despite the presence of contract health care providers at the jail, no further medical care was provided to Gruber until the following day. *Id.* at ¶ 26. None of first shift officers are moving to dismiss.

**October 31, 2011 Second Shift.** Officers Lee, Tinsley, Stiff and Sergeant Hoth worked the second shift on October 31, 2011 (approximately 2:45 p.m. to 11:00 p.m.). *Id.* at ¶¶ 30, 37, 42, 49. At approximately 5:00 p.m. on October 31, 2011, Gruber told Officer Lee that Gruber could not move his legs. *Id.* at ¶ 31. Officer Lee and Nurse Oscar Caceres ("Nurse Caceres") went into B6, where Nurse Caceres examined Gruber. *Id.* at ¶ 33. After Nurse Caceres examined Gruber, Nurse Caceres told Officer Lee that "if [Gruber] is really paralyzed he will urinate himself." *Id.* at ¶ 34.

When Officer Tinsley came on duty, he learned that Gruber had been arrested, was apparently intoxicated, had been combative, and had been pepper-sprayed. *Id.* at ¶ 38. Officer Lee also told Officer Tinsley that Gruber was claiming to be paralyzed, but that Gruber had been seen by Nurse Caceres who was of the opinion that Gruber's claims were unfounded. *Id.* at ¶¶ 36, 40. At approximately 10:30 pm, Gruber told Officer Tinsley that he could not move his arms. *Id.* at ¶ 41. However, as Gruber was saying this, Officer Tinsley saw Gruber moving his arms. *Id.*

When Sergeant Hoth went into B6 to check on Gruber, Gruber told the sergeant that he was injured. *Id.* at ¶¶ 42-43. Sergeant Hoth asked Gruber if he had been seen by a nurse and Gruber admitted that a nurse had already examined him. *Id.* at ¶ 44. Sergeant Hoth checked on Gruber later in the day and when he did, Gruber complained that he could not move. *Id.* at ¶¶ 45-46. Sergeant Hoth then checked with Officer Tinsley to confirm that Gruber had in fact been seen by the medical staff. *Id.* at ¶ 47. Officer Tinsley told Sergeant Hoth that Gruber had

2

already been seen by the nurse and that Nurse Caceres had determined that Gruber could in fact move his arms and legs. *Id.*

Officer Stiff never entered Gruber's cell, although he did see Gruber through the window of B6 several times. *Id.* at ¶¶ 49-50.

**October 31, 2011 Third Shift.** Third shift officers worked on October 31, 2011, from approximately 10:45 p.m. on October 31, 2011 to 7:00 a.m. on November 1, 2011. *Id.* at ¶ 51. Officer Tinsley told some of the third shift officers that although Gruber was claiming to be paralyzed, he had been seen by Nurse Caceres who was of the opinion that Gruber's claims were unfounded. *Id.* at ¶ 52.

During this shift, officers asked Gruber to come out of his cell to be processed but Gruber refused, claiming he could not move. *Id.* at ¶ 53. Officers then removed Gruber from B6 and carried him to the booking area so that they could secure his fingerprints, take his photograph and finish processing him. *Id.* at ¶¶ 54-55. Gruber could not stand on his own so other jail personnel either participated in holding Gruber up for the photograph or were asked to participate in holding him up. *Id.* at ¶ 58. While they were trying to take his picture, Gruber repeatedly advised the officers that he was unable to stand and unable to move his legs. *Id.* at ¶ 61. None of these third shift officers are moving to dismiss.

**November 1, 2011 First Shift.** Officers Popp and Dickson and Sergeant Kinville worked the first shift on November 1, 2011. *Id.* at ¶¶ 65, 68. When Officers Popp and Dickson went into B6 to process Gruber on the morning of November 1, 2011, Gruber told Officer Dickson that he could not move his legs. *Id.* at ¶¶ 65-66. The officers saw that Gruber could not stand so they put him in a wheelchair and moved him to the booking area. *Id.* at ¶¶ 67-68. At this time, Sergeant Kinville and Officer Popp noticed that Gruber's skin had yellowed and his

3

head was slouching. *Id.* at ¶ 68. Based on Gruber's condition, Sergeant Kinville radioed for a nurse to respond to the booking area to evaluate Gruber. *Id.* at ¶ 70. Ten minutes later, a nurse arrived in booking, evaluated Gruber, and paramedics were called. *Id.* at ¶¶ 71-72. Paramedics arrived on scene and took Gruber to Vista Medical Center where he was treated for neck injuries and paralysis. *Id.* at ¶ 77. Gruber passed away while being treated for his injuries at Schwab Rehabilitation Center on March 3, 2012. *Id.*

## STANDARDS FOR MOTION TO DISMISS

Defendants move to dismiss plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6), which authorizes dismissal of a complaint that does not state an actionable claim. *General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997). Though the court must accept as true all well-pleaded facts and draw reasonable inferences in plaintiff's favor, *Nixon v. Page,* 291 F.3d 485, 486 (7th Cir. 2002), the complaint must provide each defendant with fair notice of the claim's basis, and must also establish the requested relief is plausible on its face. *Ashcroft v. Iqbal,* 129 U.S. 1937, 1949 (2009). "[A] plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). As the Seventh Circuit has summarized, "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim," and "in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).

**ARGUMENT**

I. **PLAINTIFF'S INADEQUATE MEDICAL CARE CLAIM FAILS TO STATE A CLAIM AGAINST DEFENDANTS POPP, DICKSON, KINVILLE, LEE, TINSLEY, HOTH & STIFF.**

Plaintiff identifies only two "objective signs of injury" that the moving defendants observed or "should have known" about: namely (1) Gruber's inability to walk and (2) Gruber's yellowed skin and slouching. *See* Sec. Am. Cmplt. at ¶¶ 25, 68. As for Gruber's inability to walk, plaintiff only generally alleges that, as a group, each of the twenty-nine defendant officers, supervisors and nurses at the jail either observed Gruber's symptoms *or* should have known that he needed medical attention. *Id.* at ¶ 93.

However, to the extent plaintiff intends this allegation to apply to the moving defendants she has engaged in impermissible group pleading. *See Beaman v. Souk*, No. 10-CV-1019, 2011 WL 832506, at *5-6, *11-12 (C.D. Ill. March 3, 2011) (pleading "claims against the individual defendants as a group rather than on an individual basis . . . is not sanctioned by Rule 8(a) and should be discouraged"); *Choyce v. Friar*, No. 08-C-202, 2008 WL 2567037, at *3 (N.D. Ill. June 24, 2008) (dismissing complaint which did not identify the specific officers involved in the constitutional violation, but rather named twenty-seven separate officers who were allegedly involved). Plaintiff's recitation of the elements of a failure to provide medical care do not save her claim either. *See Brooks,* 578 F.3d at 582 ("in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitation of the elements of a cause of action"); *Beaman*, 2011 WL 832506, at *12 (failure to intervene claim dismissed as "conclusory statement . . . not entitled to weight"). Absent a plausible basis to infer that these officers knew or should have known about Gruber's inability to walk and failed to provide him treatment, the claims against them in count two should be dismissed.

As for Officers Lee, Tinsley, Stiff and Sergeant Hoth, plaintiff alleges that each of them was either told by Nurse Caceres that Gruber was not injured or were told by a fellow officer that Gruber had seen the nurse and that Nurse Caceres was of the opinion that Gruber was not injured. These officers, who are non-medical jail staff, are entitled to rely on the nurse's professional opinion, and to believe Gruber was in capable hands. *See, e.g,. Arnett v. Webster*, 658 F.3d 742, 755-56 (7th Cir. 2011) (finding plaintiff's allegations were "simply too meager to state a claim of deliberate indifference against a non-medical defendant" who relied on medical staff to properly assess and treat plaintiff); *Dixon v. Robinson*, No. 09-4979, 2010 WL 582622, at *3 (N.D. Ill. Feb. 17, 2010) (dismissing failure to provide medical care claim against prison guard who referred inmate to medical staff at the jail reasoning that "[w]ith respect to a non-medical officer, the officer is usually not liable once he referred the inmate to a medical expert for attention, as the officer will generally be justified in believing the prisoner is in capable hands"). And, plaintiff pleads nothing to suggest these defendants knew or should have known otherwise. Accordingly, plaintiff has failed to state a claim against these officers.

Count two also fails against Officers Popp, Dickson and Kinville. These officers worked the first shift on November 1, 2011. The only factual allegations against these officers are that after they noticed Gruber's condition, they put him in a wheelchair and radioed for medical assistance. *See* Sec. Am. Cmplt. at ¶¶ 65-70. Ten minutes later, medical help arrived and paramedics were called. *Id.* at ¶¶ 71-73. Plaintiff's own allegations only support the inference that these defendants provided prompt medical attention to Gruber; there is no plausible basis to state a failure to provide medical treatment claim against them.

### III. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS TO STATE A CLAIM AGAINST ANDERSON, HENDLEY, POPP, DICKSON, KINVILLE, LEE, TINSLEY, HOTH, AND STIFF.

Plaintiff's claim for intentional infliction of emotional distress fails because she does not allege that Officers Popp, Dickson, Lee, Tinsley, Stiff and Sergeants Kinville and Hoth engaged in extreme and outrageous conduct. "In order to state a cause of action for intentional infliction of emotional distress under Illinois law, a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress." *Cook v. Winfrey*, 141 F.3d 322, 330 (7th Cir. 1998) (internal quotation omitted) (citing *Doe v. Calumet City*, 161 Ill. 2d 374 (1994)). For liability to attach:

> The conduct must be extreme and outrageous. The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.

*Public Finance Corp., v. Davis*, 66 Ill. 2d 85, 89-90, 360 N.E. 2d 765, 767 (1976) (citation and internal quotation omitted). And even though a plaintiff may state a claim for excessive force, that may not necessarily suffice to allege extreme and outrageous behavior. *See Falcone v. Village of Hanover Park*, No. 02-8747, 2004 WL 2900856, at *13 (N.D. Ill. 2004) (finding plaintiff's claim that she was subjected to blood and urine alcohol tests and a leg sweep may state a claim for excessive force but not intentional infliction of emotional distress).

7

Officers Popp, Dickson and Kinville worked the first shift on November 1, 2011. The only allegations against these officers are that after they noticed Gruber's condition, they put him in a wheelchair, moved him to booking and radioed for medical assistance. *See* Sec. Am. Cmplt. at ¶¶ 65-70. Ten minutes later, help arrived. *Id.* at ¶¶ 71-73. This does not rise to the level of outrageous or extreme behavior required to state a claim for intentional infliction of emotional distress.

The allegations against Officers Lee, Tinsley, Stiff and Sergeant Hoth are similarly deficient. These officers worked the second shift on October 31, 2011 (approximately 2:45 p.m. to 11:00 p.m.). Officer Lee witnessed a nurse examine Gruber, was told by that nurse that Gruber was not injured, and relayed this information to other officers. *Id.* at ¶¶ 30-36. Officer Tinsley (1) heard Gruber complain that he could not move his arms but saw Gruber move his arms, and (2) knew Gruber was claiming to be paralyzed, and had been seen by a nurse who was of the opinion that Gruber was not paralyzed. *Id.* at ¶¶ 36-41. Sergeant Hoth heard Gruber complain of injury and (1) confirmed with Gruber that he had been seen by a nurse, (2) confirmed with another officer that Gruber had been seen by a nurse, and (3) was told by another officer that Gruber had been seen by a nurse and the nurse determined that Gruber could move his arms and legs. *Id.* at ¶¶ 42-48. Officer Stiff never went into Gruber's cell but checked on him on numerous occasions. *Id.* at ¶¶ 4-50.

Each of these officers was either told by the nurse that Gruber was not injured or was told by a fellow officer that Gruber had seen the nurse and that Nurse Caceres was of the opinion that Gruber was not injured. These officers, who are non-medical jail staff, were entitled to rely on the nurse's professional opinion, and were entitled to believe Gruber was in capable hands. *See, e.g. Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) ("if a prisoner is under the care of

8

medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Davis v. Baker*, No. 08-1310, 2010 WL 779502, at *1-2 (S.D. Ill. Feb. 26, 2010) (finding no liability for prison worker who investigates an inmate's complaints and refers him to a medical provider).

In any event, this is not conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *See Public Finance*, 66 Ill. 2d at 89-90; *see also Wells v. Bureau County*, 723 F. Supp. 2d 1061, 1089 (C.D. Ill. 2010) (absent evidence that defendants intentionally withheld adequate medical treatment precluded adequate showing of extreme and outrageous conduct). Accordingly, plaintiff's intentional infliction of emotional distress claim against Defendants Popp, Dickson, Sergeant Kinville, Lee, Tinsley, Stiff, and Hoth should be dismissed pursuant to 12(b)(6) for failure to state a claim.

## CONCLUSION

For the foregoing reason, the claims against the moving defendants should be dismissed.

Dated: September 14, 2012　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/Caroline P. Golden
　　　　　　　　　　　　　　　　　　　　CAROLINE P. GOLDEN, Attorney No. 06211227
　　　　　　　　　　　　　　　　　　　　*One of the Attorneys for Defendants Popp, Dickson, Kinville, Lee, Tinsley, Hoth and Stiff*

James G. Sotos
Jeffrey N. Given
John J. Timbo
Caroline P. Golden
THE SOTOS LAW FIRM, P.C.
550 East Devon Avenue, Suite 150
Itasca, Illinois 60143
Tel: (630) 735-3300

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on Friday, September 14, 2012, I electronically filed the foregoing **Memorandum of Law in Support of Motion to Dismiss Plaintiff's Second Amended Complaint** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Richard R. Mottweiler
Nicole L. Barkowski
Mottweiler & Associates
1627 Colonial Parkway
Inverness, IL 60067
Tel: (312) 259-0234
tcblaw@aol.com
nbarkowski@gmail.com

Mark F. Smolens
Law Office of Mark F. Smolens
1627 Colonial Parkway
Suite 301
Inverness, IL 60067
Tel: (773) 580-4982
Fax: (847) 307-7987
ryansmolensjones@hotmail.com

***Attorneys for Correct Care Solutions, LLC, Charlie Burke,***
***Susan Williams-Davis (f/k/a Susan Callahan) and Michael Keegan***
Robert P. Vogt
David A. Brueggen
Weldon-Linne & Vogt
20 South Clark Street, Suite 2050
Chicago, IL 60603
Tel: (312) 236-5151
bvogt@wlv-online.com
dbrueggen@wlv-online.com

/s/ Caroline P. Golden
CAROLINE P. GOLDEN, Attorney No. 06211227
*One of the Attorneys for Defendants Popp, Dickson,*
*Kinville, Lee, Tinsley, Hoth and Stiff*