# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EILEEN SIWULA, as special administrator of the estate of Eugene Gruber, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 12 C 2096<br>) |
| CORRECT CARE SOLUTIONS, LLC, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This is a case filed by Eileen Siwula, special administrator of the estate of Eugene Gruber. Siwula alleges that while at the Lake County Jail following his arrest, Lake County Sheriff's deputies used excessive force against Gruber, breaking his neck and causing him to suffer paralysis and eventually die. Siwula asserted claims against the Sheriff, the County, and personnel of the Sheriff's office for excessive force and failure to provide medical care. She has settled her claims against those defendants. Siwula has also sued Correct Care Solutions, Inc. and several of its personnel. She alleges that CCS personnel ignored Gruber's medical needs following his injuries and that CCS had a *de facto* policy or practice that encouraged or condoned such conduct.

CCS and the other remaining defendants, Charlie Burke, Susan Williams-Davis, Michael Keegan, and Oscar Caceres, have moved for summary judgment. In response, Siwula makes no argument in support of her claims against Williams-Davis or Keegan.

Those defendants are therefore entitled to summary judgment.

In the remainder of this decision, the Court will address Siwula's claims against Burke, Caceres, and CCS. Because the defendants have moved for summary judgment, the Court views the evidence in the light most favorable to Siwula and draws reasonable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

After Sheriff's deputies applied force to Siwula, he was taken to a jail cell. Correctional officer William Lee has stated that sometime later, while he was making rounds of the cell block, Gruber told him that he was unable to move his legs and felt like he was paralyzed. Lee then passed on this information to Caceres, a nurse employed by CCS. Lee has further stated that Caceres then accompanied him to Gruber's cell, where Gruber repeated his complaint. Lee has stated that Caceres then briefly examined Gruber, said (in substance) that if Gruber was paralyzed he would urinate on himself, and then left without taking further action or seeking any additional care or examinations for Gruber. Gruber remained in his cell for an extended period after this, until Sheriff's deputies came to take him for further processing. After a further extended period, a different correctional officer concluded that Gruber needed medical attention, and Williams-Davis, another nurse, was summoned. She advised officers to call paramedics, and Gruber was taken to a hospital in Waukegan. He died about four months later.

### 1. Caceres's motion for summary judgment

At the time of the relevant events, Gruber had been arrested but had not yet

appeared before a judge for a probable cause hearing. For this reason, under governing Seventh Circuit authority, the Fourth Amendment governs his claim regarding denial of appropriate medical care. *See Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). The question is whether Caceres's conduct was objectively unreasonable, which in turn involves assessment of four factors: whether he had notice of Gruber's medical needs; the seriousness of the medical need; the scope of the needed treatment; and law enforcement interests, including administrative, penological, or investigative concerns. *Id.*

There is no question that Gruber had a serious medical need. Defendants' experts themselves say that he was paralyzed immediately as a result of his neck injury and that the dislocation of vertebrae in his cervical spine caused injury resulted in a blood significant spinal cord compression and trauma to nerves, resulting in his blood pressure dropping and organs failing.

On the question of notice, Caceres says that when he saw Gruber in his cell, he was in no apparent distress and said only, when Caceres asked him to come to the nursing office for medical intake, that he couldn't walk and refused to say why. Caceres said he did an initial assessment, saw no signs of trauma, and decided to delay Gruber's intake until the next nursing shift. Caceres argues that says there is no admissible evidence that he was on notice of Gruber's medical need. Caceres denies that Lee or anyone else told him that Gruber was unable to move his legs or felt paralyzed.

Caceres says that Lee's statements that he told Caceres about Gruber's complaints are inadmissible hearsay. This is a specious argument. Gruber's statement

3

to Lee is admissible under Federal Rule of Evidence 803(3) as a statement of his then-existing physical condition. Lee's statement to Caceres is admissible, if not for its truth, then to show that Lee was on notice of Gruber's condition, a non-hearsay use. Lee's deposition reflects that he testified from his recollection regarding all, or virtually all, of the events summarized earlier in this decision. And to the extent Lee is unable to recall now, several years after the fact, his statement to Lake County State's Attorney's Office investigators made just over two weeks after the incident—the accuracy of which Lee verified under oath at his deposition—is admissible as a recorded recollection under Rule 803(5). A jury reasonably could credit Lee's account and thus find not only that Caceres was on notice of Lee's medical need but also that he replied in a callous manner and did nothing to follow up. A jury likewise reasonably could find that even if Gruber did not specifically request treatment, the need for treatment of a person who could not move his legs would have been obvious to any reasonably competent nurse. And there is no indication that any administrative, penological, or investigatory concerns impacted his treatment in any significant way. In short, a reasonable jury could find Caceres liable. The same would be true even if the Fourteenth Amendment's "deliberate indifference" standard applies.

Caceres also argues that there is no evidence that his alleged inaction was a proximate cause of any injury to Gruber. Defendants' expert has opined, in effect, that the injuries resulting from Gruber's treatment at the hands of the correctional officers occurred immediately and that nothing after that caused or contributed to his paralysis or death. Siwula has offered no contrary evidence. But that is not the only type of injury for which one can recover. Siwula is entitled to seek damages for emotional and

4

physical pain and suffering. The evidence taken as a whole, including the opinion by defendants' expert regarding blood pressure drop and progressive organ failure; the testimony and evidence about Gruber's requests for help; his statement to at least one correctional officer that he was scared because he could not move his extremities; evidence that he was unable to stand or move and was essentially limp and had to be held up when correctional officers took him for a booking photograph; and so on, would permit a reasonable jury to find that Caceres's failure to provide care to Gruber was a proximate cause of, if nothing else, mental and emotional distress during the period while his treatment was delayed. The case that Caceres cites does not say that expert testimony is always required, *see Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007), and more specifically they do not say that medical evidence is required to support a claim of mental or emotional distress. Rather, it is only when other evidence is insufficient to show that delayed treatment caused harm that expert testimony directly showing causation may be required. *See id.; see also, Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). In this case, the other evidence, as discussed above, is sufficient to permit a reasonable jury to find proximate causation.

Caceres also seeks summary judgment on Siwula's state-law claim for intentional infliction of emotional distress (IIED). His argument is that because there is no evidence that he acted in an objectively unreasonable or deliberately indifferent way, his conduct cannot possibly be considered extreme and outrageous, as required to sustain an IIED claim. *See* Caceres Summ. J. Mem. at 11. As the Court has determined, however, a reasonable jury could find that Caceres's conduct was objectively unreasonable and deliberately indifferent. Thus he is not entitled to summary judgment on the IIED claim.

5

Finally, the evidence—in particular, the evidence to the effect that Caceres basically said that there was no need to do anything further unless and until Gruber urinated on himself—would permit a reasonable jury to find a sufficient level of maliciousness and callousness to support an award of punitive damages against Caceres. The Court therefore declines to strike the punitive damages request.

2. **CCS and Burke's motion for summary judgment**

Charlie Burke, also a CCS nurse, is entitled to summary judgment. The evidence reflects that Burke's only interaction with Gruber was to flush pepper spray from his eyes, before the incident in which his neck was broken. In her response to defendants' motion for summary judgment, Siwula addresses Burke only in passing, saying that if he had "returned to check on Gruber's reaction to the pepper spray and/or performed an intake assessment, the paralysis could have been identified earlier and the patent could have received emergency medical care. SOAF ¶ 10." Pl.'s Resp. to CCS Defs.' Mot. for Summ. J. at 11. But the cited paragraph in Siwula's statement of additional facts (SOAF) does not support this; it says only that Burke was disciplined for failing make notes of her interaction with Gruber. *See* Pl.'s Stat. of Add'l Facts ¶ 10. In any event, Siwula points to no evidence that Burke had any awareness of any medical need on Gruber's part relating to the injury that caused his paralysis and eventually his death. No reasonable jury could find against Burke.

Siwula's claim against CCS is that it maintained unconstitutional policies and practices that caused harm to Gruber. CCS's first argument is that no such claim appears in Siwula's complaint. Siwula argues otherwise, but even though her complaint makes reference to CCS's practices, it is difficult to read it as squarely including a

6

policy-or-practice claim against CCS. That, however, does not entitle CCS to summary judgment. Even if no such claim appears in the complaint, the complaint may be amended, even now, unless the delay unfairly prejudices CCS. *See* Fed R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). CCS makes no argument along these lines; it does not contend, for example, that it would have conducted additional or different discovery if a policy-or-practice claim had been clearly asserted. *See, e.g., Doherty v. Davy Songer, Inc.*, 199 F.3d 919, 9218 (7th Cir. 1999) ("[T]he degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar the filing."). (The Court notes, in this regard, that all of the evidence of, or refuting the existence of, a policy likely would be in CCS's own hands.)

Rather, CCS's only contention is that it was not on notice of such a claim. This contention is undercut to some extent by the fact that CCS addressed the claim on the merits *in its opening brief* despite supposedly not being on notice that Siwula was advancing such a claim. The Court also notes that the nursing expert retained by Siwula provided, during discovery, a report that made it clear that Siwula was challenging CCS's policies and practices. *See* Pl.'s Ex. 7 (report of Jacqueline Moore, R.N., Ph.D.). Given the absence of prejudice, and because permitting a policy-or-practice claim would aid in presenting the merits, *cf.* Fed. R. Civ. P. 15(b)(a) (allowing amendment even *during trial*), the Court will permit amendment of the complaint to squarely assert a policy-or-practice claim against CCS. *See generally Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (factors considered when deciding whether to deny amendment).

Siwula acknowledges that CCS had express policies that required medical screening on intake and documentation of the screening process. *See* Pl.'s Resp. to CCS Defs.' Mot. for Summ. J. at 6-7. She contends, however, that CCS staff at the Lake County Jail routinely ignored these requirements, in particular when a detainee declined to answer questions. CCS higher-ups did not require nurses to report when they had problems conducting an intake screening on a particular witness, and there is deposition testimony, including from nurse Caceres, suggesting that the understanding was that there was no problem delaying intakes of apparently intoxicated or combative detainees.

The Court concludes that a reasonable jury could find, as Siwula argues, that "the reason Eugene Gruber did not get screened was [that] CCS's employees adopted customs in which they carved out an exception to policies and procedures regarding screening" for inmates who appeared less than cooperative, *id.* at 9, and that this was condoned by supervisory personnel. A reasonable jury likewise could find that this caused the alleged violation of Gruber's constitutional rights that is at issue in the case and that it was highly predictable that such a violation would occur as a result. This is a sufficient basis for imposition of policy-or-practice liability upon CCS. *See, e.g., Woodward v. Corr. Med. Servs. of Ill., Inc.*, 336 F.3d 917, 927-28 (7th Cir. 2004); *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000).[1]

---

[1] The Court notes that a recent Seventh Circuit decision points out that the Supreme Court has never addressed whether the *Monell* "policy" requirement must be satisfied to impose liability under 42 U.S.C. § 1983 on a private entity like CCS and suggests that the Seventh Circuit's use of the *Monell* standard in such cases should be reexamined. *See Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789-96 (7th Cir. 2014). For present purposes, however, the Court has employed the *Monell* requirement that, under existing Seventh Circuit authority, applies in this situation.

CCS also argues that Siwula lacks appropriate evidence of causation and that the requirements for liability of one or more of its employees for intentional infliction of emotional distress are not met. The Court rejects these arguments for the reasons discussed in connection with Caceres's motion for summary judgment.

### Conclusion

For the reasons stated above, the Court denies defendant Caceres's motion for summary judgment [dkt. no. 117]. The Court grants the remaining defendants' motion for summary judgment in part [dkt. no. 120]. Summary judgment is granted in favor of defendants Burke, Williams-Davis, and Keegan, but Correct Care Services' motion for summary judgment is denied. Plaintiff is given leave to amend her complaint to squarely assert a *Monell* claim against Correct Care Services; the amended complaint is to be filed by March 11, 2015. The ruling and status hearing date of March 13, 2015 is vacated, and a status hearing is set for March 16, 2015 at 8:30 a.m. in chambers (Room 2188). On the Court's motion, the final pretrial conference set for March 25, 2015 is vacated and reset to March 26, 2015 at 3:30 p.m. The final pretrial order remains due on the date previously ordered, and motions *in limine* and responses are due pursuant to the default schedule found on the undersigned judge's web page. See http://www.ilnd.uscourts.gov/home/JUDGES/KENNELLY/FinalPretrialOrderOct06.pdf.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 8, 2015